**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| PAULA HONEYCUTT, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Case No.: |
| Plaintiff, | ) ) ) | |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| FAIR OAKS FARMS FOOD, LLC, | ) ) | |
| Defendant. | ) ) ) | |

**CLASS ACTION COMPLAINT**

Plaintiff Paula Honeycutt ("Plaintiff"), through her undersigned attorneys, brings this Class Action Complaint against Defendant Fair Oaks Farms Food, LLC ("FOF" or "Defendant"), individually and on behalf of all others similarly situated, and complains and alleges upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys:

**NATURE OF THE ACTION**

1.     Fair Oaks Farms Food, LLC charges a premium for its Milk Products[1] by prominently marketing that it treats its milk cows with extremely high levels of care, including a representation on the label that FOF "manage[s] the herd to ensure happy, healthy, well-cared for animals, and utilize[s] milking techniques that guarantee the cleanest milk for our dairy products."  These representations are also prominently displayed on FOF's website and form a

---

[1] Milk Products refers to every variety and size of potable milk products sold by Defendant Fair Oaks Farms Food, LLC nationwide, in all sizes, as described herein, under the "Fair Oaks Farms" brand.  The labels of the varieties of the Milk Products are substantially identical other than their flavor and fat content profile, and each contain the false representations discussed herein, i.e., the Animal Welfare Claims.

key part of the marketing surrounding the farm experience that FOF sells to tourists. Collectively, Defendant's false representations concerning the "care" that its cows purportedly receive are referred to herein as "Animal Welfare Claims."

2.      These representations were shown to be untrue when Animal Recovery Mission, a not-for-profit animal welfare organization out of Miami Beach, Florida, posted a pair of exposés online detailing myriad instances of animal cruelty observed toward calves and cows at FOF.[2]

3.      Animal Recovery Mission observed employees throwing, slapping, and kicking calves and took video recordings of the conduct witnessed.  Animal Recovery Mission further witnessed young calves being starved to death, beaten with steel bars, and burned with branding irons.  In addition, Animal Recovery Mission also witnessed grown cows who could no longer produce milk being shot and left to die, a process that sometimes took several hours.  Animal Recovery Mission also witnessed employees intentionally breaking bones in the tails of uncooperative milk cows, forcing them to return to milking within minutes of giving birth, and punching, stabbing, and kicking cattle while in the milking machines.  This and other conduct was released to the public in a pair of videos and written reports on June 4, 2019 and June 12, 2019.

4.      Nonetheless, FOF has admitted that the practices witnessed by the investigator from the Animal Recovery Mission occurred and the owner of FOF, Mike McCloskey, says that he takes "full responsibility" for the practices at issue.[3]

5.      Plaintiff and the class members she seeks to represent purchased Defendant's Milk Products based on Defendant's misleading and false advertising and the labeling of their

---

[2] https://www.foxnews.com/us/authorities-investigate-alleged-animal-abuse-at-famous-farm, last accessed March 10, 2020.

[3] https://www.chicagotribune.com/business/ct-biz-fair-oaks-farms-alleged-animal-abuse-20190605-story.html,   last accessed March 10, 2020.

Milk Products.  Plaintiff and the class accordingly suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and/or misleading practices set forth herein.

6.      Plaintiff seeks relief in this action individually, and on behalf of all purchasers of Defendant's Milk Products, for Defendant's fraud, breach of express and implied warranties, negligent misrepresentation, unjust enrichment, and violations of various state consumer protection laws discussed herein.

## JURISDICTION AND VENUE

7.      This Court has original jurisdiction over this controversy pursuant to 28 U.S.C. § 1332(d), Plaintiff's claims and the claims of the other members of the Class exceed $5,000,000 exclusive of interest and costs, and there are numerous Class members who are citizens of states other than Defendant's state of citizenship.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) and (c) because a substantial part of the events or omissions giving rise to Plaintiff and the Class's claims occurred in this District and because Defendant's principal place of business lies within this District..

## PARTIES

9.      Plaintiff Paula Honeycutt is a citizen of Indiana, residing in Crown Point.  Within the past two years, Ms. Honeycutt purchased Defendant's Milk Products from Strack & Van Til in Indiana.  Ms. Honeycutt purchased Fair Oaks Farms chocolate milk in the 1.5-liter size approximately once a week.  Prior to purchasing the milk, Ms. Honeycutt reviewed the milk's labels, visited Fair Oaks Farms' tourist location, reviewed Fair Oaks Farms' website, and relied on Defendant's Animal Welfare Claims stating that the milk was sourced from "happy, healthy,

well-cared for animals, and utilize milking techniques that guarantee the cleanest milk for our dairy products."

10.     Ms. Honeycutt attributed value to these promises and would not have purchased the Milk Products, or would not have purchased them on the same terms, if she knew the truth about Defendant's torture and abuse of their milk cows.  Should Ms. Honeycutt encounter any of Defendant's Milk Products in the future, she cannot rely on the truthfulness of the labels' statements, absent corrective advertising.  If Defendant takes corrective action of their treatment of cows and correct the Milk Products' labels, Ms. Honeycutt would consider buying the current formulations, as she is a regular milk purchaser.

11.     Defendant Fair Oaks Farms Food, LLC is an Indiana corporation with its principal place of business at 964 N. 600 E., Fair Oaks, Indiana 47943.  Defendant manufactures, advertises, sells, distributes, and markets the Milk Products as alleged herein at least within the Midwest and nationwide, including in Indiana and Illinois.  Defendant manufactures, advertises, sells, distributes, and markets the Milk Products as alleged herein nationwide, including in Indiana.  Defendant's misleading marketing, advertising and product information concerning the Animal Welfare Claims was conceived, reviewed, approved, and otherwise controlled from Defendant's Indiana headquarters.  Defendant's misleading marketing concerning the Animal Welfare Claims was coordinated at, emanated from, and was developed at its Indiana headquarters.   All critical decisions regarding the Animal Welfare Claims, as well as Defendant's treatment of its cows, were made in Indiana.  Further, Fair Oaks Farms, the namesake farm of Fair Oaks Farms milk, is located in Indiana.

## FACTS COMMON TO ALL CAUSES OF ACTION

### Consumers Are Willing To Pay A Price Premium For Animal Welfare Claims

12.      In recent years, meat and dairy manufacturers have begun making animal welfare claims on product labels to drive more sales, or to justify charging higher prices.  The reasoning is simple: consumers deeply care whether their food comes from animals that were humanely treated and received a high level of care and are willing to pay a price premium for food sourced from humane farms.  Defendant made the Animal Welfare Claims for this reason – to charge inflated prices and increase unit sales of their Milk Products.

13.      For instance, a recent survey from Technomic and the American Society for the Prevention of Cruelty to Animals ("ASPCA") found that: (1) 77 percent of consumers are concerned about animal welfare as it applies to their food, (2) more than two thirds of consumers pay some or a lot of attention to food labels regarding how the animal was raised, and (3) that over 70 percent of retailers stocking products with humane claims report increased sales.[4]

14.      In 2015, Wal-Mart, the nation's largest seller of food products, found through its own research that: (1) 77 percent of shoppers said they will increase their trust in a retailer that improves the treatment of livestock and that (2) 66 percent would increase their likelihood of shopping at a retail location that improves the treatment of livestock.[5]

15.      In 2014, the American Humane Association conducted a national survey of 5,900 consumers that found that: (1) 94.9 percent of consumers were "very concerned about farm animal welfare," that (2) 75.7 percent of consumers "stated that they were very willing to pay more for humanely raised meat, dairy and eggs," and that (3) a "humanely raised" label was

---

[4] *See* https://www.grocerydive.com/news/grocery--consumers-are-willing-to-pay-a-premium-for-animal-welfare-certifications/533852/ (last accessed March 10, 2020).
[5] *See* https://foxbaltimore.com/news/local/wal-mart39s-push-on-animal-welfare-hailed-as-game-changer (last accessed March 10, 2020).

ranked highest in importance over other common heath claims, such as "antibiotic free," "organic," or "natural."[6]

16.     In an aided question, consumers responding to a survey conducted for Demeter Communications' 2010 SegmenTrak study were asked to consider what they would like to know from farmers about food production that they currently do not know.  More than two thirds (68 percent) indicated they wanted to know more about ways farmers "ensure animal care," second only to "measures used to produce safe food."[7]

17.     In 2010, a study published in the Universities Federation for Animal Welfare found that "consumers desire high standards of animal care, even if it raises food prices."[8]

18.     Indeed, Defendant's Milk Products sell at a sizable per-ounce mark-up to those of its competitors, even though there is no difference in the ingredients between its milk and those of its major competitors.  For example, Defendant's 2% reduced fat milk contains the same ingredients found in Dean's 2% reduced fat milk: namely milk, Vitamin A, and Vitamin D.

**Defendant Made Animal Welfare Claims A Central Tenet Of The Milk Products' Labeling**

19.     Defendant preyed on consumer desire for dairy products sourced from farms that ensure high levels of animal welfare by making Animal Welfare Claims a central tenet of their labeling campaign.  Defendant did so while systematically abusing and torturing their dairy cows.

20.     Defendant makes virtually identical Animal Welfare Claims on every label of their Milk Products.

---

[6] *See* https://www.americanhumane.org/app/uploads/2016/08/2014-humane-heartland-farm-survey.pdf (last accessed March 10, 2020).
[7] *See* http://agwired.com/2010/05/03/segmentrak-solicits-consumer-opinions-on-food-production/  (last accessed March 10, 2020).
[8] *See*  https://www.ingentaconnect.com/contentone/ufaw/aw/2010/00000019/00000003/art00015 (last accessed March 10, 2020).

21.     An example of a 1.5 Liter label of the Milk Products is displayed below.   All versions of 1.5 Liter labels of the Milk Products, including the 1.5 Liter Milk Products purchased by Plaintiff, are substantively identical to the image depicted below:



22.     The label states:

At **Fair Oaks Farms** we take the art of dairy very seriously.   On our family farms, we control the entire process from **Our Farm to Your Table**.   We start by growing and harvesting the feed for cows to assure the most delicious flavored milk.   We then manage the herd to ensure happy, healthy, well-cared for animals, and utilize milking techniques that guarantee the cleanest milk for our dairy products. (emphasis in the original)

23.     Defendant makes an explicit "promise" that they "ensure happy, healthy, well-cared for animals." However, as discussed herein, Defendant's "promise" is a farce.  Defendant's cows are not "happy, healthy, and well-cared for," but are rather systematically abused and tortured.

24.     Additionally, prior to the Animal Recovery Mission's exposé (and to this day), Fair Oaks Farms prominently advertised their Animal Welfare Claims on their website as well, noting that "From 'Grass to Glass' we oversee the entire process from what our cows eat to the quality of milk that goes into our savory, nutritious products."[9]  The website also stated, "We are not only committed to educating the public about modern farming efforts, but also to protecting the environment, caring for our animals and ensuring the highest quality products possible."[10]  Consumers are urged to visit Defendant's website right on the labels of the Milk Products, as the front of the labels state "Visit us on the Web at fofarms.com."

25.     Furthermore, Defendant's website offers a "Dairy Adventure" that purports to show the actual lives of cows on Defendant's farm, including an interactive movie that shows how happy its cows are and a chance to see calves being born in Defendant's "unique birthing facility."[11]  But, as discussed herein, Defendant's pervasive marketing of the Milk Products is false and misleading.

**Defendant's Animal Welfare Claims Are False**

26.     Between August and November 2018, Animal Recovery Mission ("ARM"), a nonprofit animal welfare group, had an investigator visit Defendant's flagship farm in Indiana to see how the cows are really treated.

---

[9]     http://web.archive.org/web/20190201204143/https://fofarms.com/things-to-explore/dairy-adventure/, from February 1, 2019, last accessed March 10, 2020.
[10]  http://web.archive.org/web/20180925101816/http://fofarms.com/about-us from February 1, 2019, last accessed March 10, 2020.
[11]  *Id.*

27.     An ARM employee went undercover as a calf care employee at Fair Oaks Farms – the namesake farm where Defendant sources the milk for the Fair Oaks Farm Milk Products – between August and November of 2018.   During that time, the ARM employee videotaped systematic and horrific abuse of Defendant's cows.   Videos released by ARM documenting Defendant's systematic abuse of their cows can be found at https://vimeo.com/340292407 (4-minute video) (last accessed March 10, 2020) and https://vimeo.com/340769169 (one-and-a-half-hour video) (last accessed March 10, 2020).

28.     ARM's undercover employee reported (and recorded) observing the following abuses "on a virtually daily basis":

- Slapping, kicking, punching, pushing, throwing and slamming calves;

- Calves stabbed and beaten with steel rebar;

- Calves hit in the mouth and face with hard plastic milking bottles;

- Calves kneed in the spine;

- Calves subjected to extreme temperatures;

- Calves provided with improper nutrition;

- Calves denied medical attention; and

- Calves experiencing extreme pain and suffering, and in some cases permanent injury and death.

29.     At Fair Oaks Farms, the calves stay in filthy, overcrowded and hot conditions. Temperature readings show that it can be well over 100 degrees inside their hutches.   Dead calves were dumped in mass grave sites by employees.[12]

---

[12]   *See*   https://www.cbsnews.com/news/after-undercover-video-exposes-animal-abuse-at-fair-oaks-farms-grocery-store-removes-products/ (last accessed March 10, 2020).

30.     Supervisors and owners at the "flagship farm" were aware of the conditions and took part in the abuse.[13]

31.     In addition to the intense, systematic maltreatment and abuse of calves, Fair Oaks Farms provides effectively no treatment or care to mature, sick, or injured cows.  Cows too sick to milk are shot with a small caliber weapon.  Because the employees are not properly trained, however, cows are left to die slow, painful deaths over the course of many hours from gunshot wounds to the head.[14]

32.     The following images are a true representation of the "care" that Defendant's cows actually receive:

Dumping Area For Dead Calves



---

[13] *See id.*

[14] *See* https://animalrecoverymission.org/wp-content/uploads/2019/06/Operation_Fair_Oaks_Farms_Dairy_Adventure.pdf (last accessed March 10, 2020).

Dead Calves Being Transported



Calf's Head Being Stomped On By Full Weight Of Adult Man



Calves Left Throughout Summer In 113 Degree Temperature



**Defendant Admits That The Animal Abuse Practices Took Place At Fair Oaks Farms**

33.     After the release of the ARM video, Fair Oaks Farm's owner Mike McCloskey admitted that everything depicted in the video actually occurred at Defendant's farm.

34.     McCloskey admitted that "after closely reviewing the released ARM video," he can confirm that employees at Fair Oaks Farm were "committing multiple instances of animal cruelty and despicable judgment."  McCloskey stated that he "take[s] full responsibility for the actions seen in the footage, as it goes against everything that we stand for in regards to responsible **cow care and comfort**." [15] (emphasis added).  In other words, while the labels of Defendant's Milk Products promised "happy, healthy, well-cared for animals," McCloskey admits that Defendant failed to live up to that standard by "committing multiple instances of animal cruelty and despicable judgment."  Nonetheless, although McCloskey stated he took "full responsibility," he then went on to excuse the animal abuse by blaming a few bad apples, even though the abuse was rampant and known and approved by management.

## CLASS REPRESENTATIONS

35.     Plaintiff brings this case as a class action under Federal Rule of Civil Procedure 23(b)(2) and (b)(3) on behalf of the below-defined Classes:

> **National Class:** All persons in the United States that purchased the Defendant's Milk Products.

> **Indiana Subclass:** All persons that purchased Defendant's Milk Products in the state of Indiana.

36.     Collectively, the National Class and Indiana Subclass are referred to as the "Class" or "Classes."  Excluded from the Class are Defendant, the officers and directors of the

---

[15] *See* https://fofarms.com/post/response/ (last accessed March 10, 2020).

Defendant at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendant has or had a controlling interest.  Any judge and/or magistrate judge to whom this action is assigned and any members of such judges' staffs and immediate families are also excluded from the Class.  Also excluded from the Class are persons or entities that purchased the Milk Products for purposes of resale.

37.     Plaintiff is a member of the Classes.

38.     Defendant sells thousands, if not millions of containers of the Milk Products throughout Indiana and the nation.  Defendant's Milk Products are available in major Midwestern supermarkets, including in Indiana and Illinois.  It is or has at times during the Class Period been sold online via Walmart.com and Amazon.com.  Defendant made substantially identical Animal Welfare Claims online as those made on the Milk Products' labels.[16] Accordingly, members of the Class are so numerous that their individual joinder herein is impracticable.  The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant, third party retailers, and vendors.

39.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to, whether the Milk Products are misbranded, and whether the labeling, marketing and promotion of the Milk Products is false, misleading, and fraudulent.

---

[16] For instance, on Walmart's website, the Milk Products are sold alongside a description stating that Defendant "insure[s] happy, healthy well-cared for animals, utiliz[ing] milking techniques that guarantee the cleanest milk." https://www.walmart.com/ip/Fair-Oaks-Dairy-Fair-Oaks-Milk-0-5-gl/144150915 (last accessed March 10, 2020).

40.     The claims of the named Plaintiff are typical of the claims of the Class in that the named Plaintiff was exposed to Defendant's false, misleading and misbranded labels, purchased the Milk Products, and suffered losses as a result of those purchases.

41.     Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiff and her counsel.

42.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Class members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.   Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

### FIRST CLAIM FOR RELIEF
### Fraud
### (On Behalf of the Nationwide Class and the Indiana Subclass)

43.     Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

44.     Plaintiff brings this claim individually and on behalf of the members of the Classes against Defendant.

45.     As discussed above, Defendant made false and misleading Animal Welfare Claims on the labels of its Milk Products, and failed to disclose material information about the Milk Products, such as the fact that the milk is derived from cows that are systematically abused and tortured.

46.     The misrepresentations and omissions made by Defendant, upon which Plaintiff and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class members to purchase Defendant's Milk Products.

47.     The fraudulent actions of Defendant caused damage to Plaintiff and Class members, who are entitled to damages and other legal and equitable relief as a result.

**SECOND CLAIM FOR RELIEF**
**Violation Of The Indiana Deceptive Trade Practices Act,**
**Ind. Code Ann § 24-5-0.5-2 *et seq.***
**(On Behalf Of The Indiana Subclass)**

48.     Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

49.     Plaintiff and Indiana Subclass members are "persons" within the meaning of Ind. Code Ann. § 24-5-0.5-2.

50.     As described *supra*, Defendant's actions are "incurable deceptive acts" within the meaning of Ind. Code Ann. § 24-5-0.5(2)(8) in that they were intended to mislead consumers.

51.     Indiana's Deceptive Trade Practices Act ("IDTPA") prohibits "deceptive acts," which include representing (1) that a product "has sponsorship, approval, performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have, (2) that a product "is of a particular standard, quality, grade,

-15-

style, or model, if it is not and if the supplier knows or should reasonably know that it is not," (3)

and that a transaction "involves or does not involve a warranty, a disclaimer of warranties, or

other rights, remedies, or obligations, if the representation is false and if the supplier knows or

should reasonably know that the representation is false."   Ind. Code Ann. § 24-5-0.5-3(b)(1),

(2), (8).

52.     Defendant violated the IDPTA by representing that its Milk Products were

sourced from "happy, healthy, well-cared for animals."   Plaintiff and the Indiana Subclass

reasonably believed that the Milk Products were sourced from "happy, health' well care for

animals" and were not sourced from cows subjected to torture and abuse.

53.     As described *supra*, Defendant's actions were willful.

54.     Plaintiff and the Indiana Subclass seek damages up to the amount of treble

damages or $1,000 per occurrence, whichever is greater; an order enjoining Defendant's unfair,

unlawful, and/or deceptive practices; reasonable attorneys' fees; and any other just and proper

relief available under Ind. Code Ann. § 24-5-0.5-4.

### THIRD CLAIM FOR RELIEF
### Unjust Enrichment
### (On Behalf of the Nationwide Class and the Indiana Subclass)

55.     Plaintiff repeats the allegations contained in the paragraphs above as if fully set

forth herein.

56.     Plaintiff brings this claim individually and on behalf of the members of the

proposed Classes against Defendant.

57.     Plaintiff and the other members of the Class conferred benefits on Defendant by

purchasing Defendant's Milk Products.

58.     Defendant has been unjustly enriched by retaining the revenues derived from

Plaintiff and the other members of the Class' purchase of the Milk Products.  Retention of the

monies under these circumstances is unjust and inequitable because Defendant's labeling of the

Milk Products was misleading to consumers, which caused injuries to Plaintiff and the other members of the Class because they would not have purchased the Milk Products if the true facts were known.

59.     Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and the other members of the Class is unjust and inequitable, Defendant must pay restitution to Plaintiff and the other members of the Class for their unjust enrichment, as ordered by the Court.

<u>**FOURTH CLAIM FOR RELIEF**</u>
<u>**Negligent Misrepresentation**</u>
<u>**(On Behalf of the Nationwide Class and the Indiana Subclass)**</u>

60.     Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

61.     Plaintiff brings this claim individually and on behalf of the members of the Classes against Defendant.

62.     As discussed above, Defendant made false and misleading Animal Welfare Claims on the labels of its Milk Products, such as the fact that the milk is derived from cows that are systematically abused and tortured.  At the time Defendant made these representations, Defendant knew or should have know that these representations were false or made them without knowledge of their truth or veracity.

63.     The negligent misrepresentations and omissions made by Defendant, upon which Plaintiff and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class members to purchase Defendant's Milk Products.

64.     The negligent actions of Defendant caused damage to Plaintiff and Class members, who are entitled to damages and other legal and equitable relief as a result.

## FIFTH CLAIM FOR RELIEF
### Breach of Express Warranty
### (On Behalf of the Nationwide Class and the Indiana Subclass)

65.    Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

66.    Plaintiff brings this claim individually and on behalf of the members of the Classes against Defendant.

67.    In connection with the sale of the Milk Products, Defendant issued an express warranty that Defendant "manage[s] the herd to ensure happy, healthy, well-cared for animals, and utilize[s] milking techniques that guarantee the cleanest milk for our dairy products."

68.    Defendant's affirmation of fact and promise on the Milk Products' labels became part of the basis of the bargain between Defendant and Plaintiff and Class members, thereby creating express warranties that the Milk Products would conform to Defendant's affirmation of fact, representations, promise, and description.

69.    As discussed above, Defendant breached its express warranty because it systematically abused and tortured its milk cows.  In short, the Milk Products do not live up to Defendant's express warranty.

70.    Plaintiff and the Class members were injured as a direct and proximate result of Defendant's breach because: (a) they would not have purchased the Milk Products if they had known the true facts; (b) they paid for the Milk Products due to the mislabeling of the Milk Products; (c) they would not have purchased the Milk Products on the same terms if they had known the true facts; (d) they paid a price premium for the Milk Products due to Defendant's false warranties and affirmations of fact; and (d) the Milk Products did not have the characteristics or qualities as promised.

71.     Plaintiff provided Defendant with pre-suit notice of Defendant's breach of warranty on February 7, 2020.

### SIXTH CLAIM FOR RELIEF
### Breach of Implied Warranty of Merchantability
### (On Behalf of the Nationwide Class and the Indiana Subclass)

72.     Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

73.     Plaintiff brings this claim individually and on behalf of the members of the Classes against Defendant.

74.     The Indiana Uniform Commercial Code, § 26-1-2-314 provides that, unless excluded or modified, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.  To be "merchantable," goods must, *inter alia*, "run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved," "are adequately contained, packaged, and labeled as the agreement may require," and "conform to the promise or affirmations of fact made on the container or label if any."

75.     In connection with the sale of the Milk Products, Defendant impliedly warranted that Defendant "manage[s] the herd to ensure happy, healthy, well-cared for animals, and utilize[s] milking techniques that guarantee the cleanest milk for our dairy products."

76.     Defendant was a merchant with respect to the goods of this kind which were sold to Plaintiff and the Classes, and there was in the sale to Plaintiff and other consumers an implied warranty that those goods were merchantable.

77.     However, Defendant breached its implied warranty because it systematically abused and tortured its milk cows.  In short, the Milk Products do not "conform to the promise or affirmations of fact made on the container or label."

78.     Plaintiff and the Class Members were injured as a direct and proximate result of Defendant's breach because: (a) they would not have purchased the Milk Products if they had known the true facts; (b) they paid for the Milk Products due to Defendant's implied warranties; (c) they would not have purchased the Milk Products on the same terms if they had known the true facts; (d) they paid a price premium for the Milk Products due to Defendant's implied warranties; and (d) the Milk Products did not have the characteristics or qualities as impliedly warranted.

79.     Plaintiff provided Defendant with pre-suit notice of Defendant's breach of warranty on February 7, 2020.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff and the other Class members respectfully request that the Court:

A.      Certify the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B.      Award damages, including compensatory, exemplary, statutory, incidental, consequential, actual, and punitive damages to Plaintiff and the Classes in an amount to be determined at trial;

C.      Award Plaintiff and the Classes their expenses and costs of the suit, pre-judgment interest, post-judgment interest, and reasonable attorneys' fees;

D.      Grant restitution to Plaintiff and the Classes and require Defendant to disgorge their ill-gotten gains;

E.      Permanently enjoin Defendant from engaging in the unlawful conduct set forth herein; and

     F.     Grant any and all such other relief as the Court deems appropriate.

Dated: March 12, 2020                Respectfully submitted,

by:  _s/ Carl V. Malmstrom_

**WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLC**
Carl V. Malmstrom
111 W. Jackson St., Suite 1700
Chicago, Illinois 60604
Tel.: (312) 984-0000
Fax: (212) 686-0114
malmstrom@whafh.com

**WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP**
Jeffrey G. Smith*
Matthew M. Guiney*
270 Madison Avenue
New York, New York 10016
Tel.: (212) 545-4600
Fax: (212) 686-0114
smith@whafh.com
guiney@whafh.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher*
Yeremey Krivoshey*
Frederick J. Klorczyk III*
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Tel: (925) 300-4455
Fax: (925) 407-2700
ltfisher@bursor.com
ykrivoshey@bursor.com
fklorczyk@bursor.com

**BURSOR & FISHER, P.A.**
Scott. A. Bursor*
2665 S. Bayshore Dr., Suite 220
Miami, FL 33133
Tel: (305) 330-5512
Fax: (305) 676-9006
scott@bursor.com

-21-

*Admission *Pro Hac Vice* Pending

***Counsel for Plaintiff***
***and The Proposed Putative Classes***